IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SULLO & BOBBITT, PLLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:11-CV-1926-D |
| VS. | § | |
| | § | |
| GREG ABBOTT, ATTORNEY GENERAL OF TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The court revisits this commercial speech case brought by a law firm and attorney under 42 U.S.C. § 1983 seeking immediate access to misdemeanor offense information for use in soliciting clients. The court concludes on renewed motions to dismiss under Fed. R. Civ. P. 12(b)(6) that plaintiffs have again failed to state a claim on which relief can be granted, and it again grants plaintiffs leave to amend.

I

This is an action by a lawyer and law firm challenging the denial by certain municipalities and a justice court of immediate access to misdemeanor offense information that plaintiffs seek to use in soliciting clients by direct mail. In its prior memorandum opinion and order in this case, the court dismissed plaintiffs' claims, but it also granted plaintiffs leave to replead. *See Sullo & Bobbitt, PLLC v. Abbott*, 2012 WL 2796794, at *1 (N.D. Tex. July 10, 2012) (Fitzwater, C.J.) ("*Sullo & Bobbitt I*"), *appeal docketed*, No. 12-10843 (5th Cir. Aug. 15, 2012). As permitted in *Sullo & Bobbitt I*, plaintiffs have filed

a second amended complaint.

In their second amended complaint, plaintiffs Sullo & Bobbitt, PLLC ("Sullo & Bobbitt") and Barry L. Bobbitt ("Bobbitt") seek relief under 42 U.S.C. § 1983 against Stewart Milner ("Judge Milner"), in his official capacity as the Chief Municipal Judge of the City of Arlington, Texas; Gloria Lopéz-Carter ("Lopéz"), in her official capacity as Director of the City of Dallas Municipal Court; Thomas G. Jones ("Justice Jones"), in his official capacity as Justice of the Peace, Precinct 1-1 of Dallas County, Texas; and Ninfa L. Mares ("Judge Mares"), in her official capacity as Chief Municipal Judge of the City of Fort Worth, Texas.[1] Bobbitt is a Texas attorney and an owner of Sullo & Bobbitt, a law firm.[2] Bobbitt's practice focuses on defending individuals charged with misdemeanor offenses in the Dallas-Fort Worth area. Plaintiffs advertise their availability for legal representation through direct mail solicitations. To do so, plaintiffs request from courts, including those of Judge Milner,

[1]Plaintiffs also originally sued two prosecutors, three chiefs of police, and Texas Attorney General Greg Abbott ("the Attorney General"), in their official capacities. The two prosecutors have been dismissed with prejudice by notice of dismissal. Plaintiffs expressly omitted the chiefs of police in their first amended complaint. And the court dismissed plaintiffs' action against the Attorney General for lack of standing. *See Sullo & Bobbitt I*, 2012 WL 2796794, at *5-6. After the court dismissed the action against the Attorney General, plaintiffs filed an unopposed motion to sever so that they could pursue an appeal. The court treated the motion as a motion to enter final judgment under Fed. R. Civ. P. 54(b), which it granted, thereby dismissing plaintiffs' action against the Attorney General. The appeal of that judgment is pending.

[2]In deciding the Rule 12(b)(6) motions to dismiss, the court construes plaintiffs' second amended complaint in the light most favorable to them, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in their favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

Justice Jones, and Judge Mares (collectively, "the Judges"), and from Lopéz, new misdemeanor case information. Plaintiffs specifically seek either copies of new misdemeanor criminal citations that have been filed with the Judges and Lopéz, or "a copy of the automated court case file information, derived from the criminal citations, sufficient to identify the defendant's name and address, the date of the violation/citation, and criminal violation charged." 2d Am. Compl. ¶ 2. Plaintiffs allege that they currently receive the requested information, but only after inordinate delay. Plaintiffs seek a declaratory judgment holding that they are entitled to access this information within one business day of when criminal citations are filed with the courts, or, alternatively, within one business day of when a new case appears in the courts' files.

Plaintiffs sue under § 1983 for violations of their asserted right of immediate access to courts' misdemeanor case information under the First and Fourteenth Amendments.[3] In its prior opinion, this court dismissed plaintiffs' claim for a constitutional right of access as to the Judges and Lopéz on the grounds that plaintiffs had failed to adequately allege that the requested citations were "court records or documents" subject to the asserted right of access, or that the requested court records met the first prong of the "experience" and "logic" test, which examines whether there is a history of access to the requested court records. *See Sullo & Bobbitt I*, 2012 WL 2796794, at *13-14. As to Justice Jones, the court also dismissed plaintiffs' claims for failure to adequately allege that Justice Jones is a "policymaker," which

[3]References in this memorandum opinion and order to Fourteenth Amendment rights are to First Amendment rights made applicable via the Fourteenth Amendment.

is necessary to plead liability against a municipality for Justice Jones's actions. *See id.* at *18. The second amended complaint attempts to remedy these deficiencies. Plaintiffs also now allege a federal common law right of access to the requested court records. Plaintiffs seek declaratory relief and, if necessary, ancillary injunctive relief. Defendants Justice Jones and Lopéz move to dismiss under Rule 12(b)(6).[4]

II

To survive the Rule 12(b)(6) motions, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader

---

[4]The remaining defendants, Judges Milner and Mares, have recently filed motions for summary judgment that the court will decide in due course. The court notes that, because plaintiffs' claims are similar against all defendants, the court ruling today likely would apply to Judges Milner and Mares as well.

is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court first addresses plaintiffs' asserted federal common law right to access state court records. Although the federal common law right of access to judicial records is well-established, *see SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)), it is a right that is limited to federal-court records. Plaintiffs do not point to, and the court has not found, any examples where the federal common law right has been applied to state court records. *Cf. Collins v. Etheridge*, 2005 WL 1475407, at *2 (E.D.N.Y. June 22, 2005) (addressing right of access under First Amendment and *New York* common law); *Resnick v. Patton*, 2006 WL 12994, at *3 (N.D. Ohio Jan. 3, 2006) (dismissing journalist's claim of federal common law right to access state court records for lack of standing, and stating also, "For this Court to interject itself into this matter would only generate friction between state and federal courts."), *aff'd*, 258 Fed. Appx. 789 (6th Cir. 2007). Federal common law does not replace state substantive law except in a few areas involving "uniquely federal interests," such as where federal proprietary interests are at stake. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988); *see also* 17A J. Moore, Moore's Federal Practice § 124.42[1] (3d ed. 2010). The

court dismisses plaintiffs' claim based on the federal common law right of access.[5]

IV

The court next addresses plaintiffs' asserted constitutional right of immediate access to courts' misdemeanor case information under the First and Fourteenth Amendments.

A

In *Sullo & Bobbitt I* this court, after surveying the law in other circuits and recognizing the absence of contrary precedent from the Supreme Court and Fifth Circuit, held that "the public and press have a qualified First Amendment right of access to court records and documents if access has historically been available to the press and public, and it plays a significant positive role in the functioning of the particular process in question." *Sullo & Bobbitt I*, 2012 WL 2796794, at *13. Defendants move to dismiss the claimed right of access on the grounds that plaintiffs have failed to adequately plead that the requested citations are "court records," or that the requested information has historically been made available to the press and public.

B

The court holds that plaintiffs have adequately pleaded that the requested types of information—misdemeanor citations filed in the municipal and justice courts in question, or, alternatively, automated court case file information gleaned from the citations—constitute

[5]In *Sullo & Bobbitt I* it was unnecessary for the court to address whether the federal common law right of access applied in these circumstances because plaintiffs had not yet pleaded that claim. *See Sullo & Bobbitt I*, 2012 WL 2796794, at *12 (noting that plaintiffs had not sued on basis of common law right).

"court records" for purposes of the First Amendment right of access.

There is no consensus regarding what constitutes a "court record." Some courts hold that "'the filing of a document gives rise to a presumptive right of public access.'" *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 782 (3d Cir. 1994) (emphasis omitted) (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161-62 (3d Cir. 1993)); *see also Pratt & Whitney Can., Inc. v. United States*, 14 Cl. Ct. 268, 273 (1988) (considering as public court records "[a]ll pleadings, orders, notices, exhibits and transcripts filed in the Claims Court"). Other courts require that a filed document play a role in the judicial process, such as "document[s] which [are] presented to the court to invoke its powers or affect its decisions." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995); *see also United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997) ("We thus hold that what makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process.").

Plaintiffs have sufficiently pleaded that the citations requested here constitute court records because they are filed with the court and play a significant role in the judicial process. The second amended complaint clarifies that plaintiffs only request citations that have been *filed* with the courts at issue: the municipal courts in Dallas, Fort Worth, and Arlington; and Justice Jones's justice court. *See* 2d. Am. Compl. ¶ 2(a) (seeking "new misdemeanor criminal citations issued by law enforcement agencies that have been *filed* (either in paper form or in electronic form) with the Judges and Lopez" (emphasis added)). *Cf. Sullo & Bobbitt I*, 2012 WL 2796794, at *13 n.18 (noting that first amended complaint

did not specify that requested citations were those filed with the courts).

Citations play a significant role in the judicial process of municipal and justice courts in Texas. They are used by peace officers for Class C misdemeanors and transportation violations. *See* Tex. Code Crim. Proc. Ann. art. 14.06 (West 2005); Tex. Transp. Code Ann. § 543.003 (West 2011). Citations contain a written notice of the time and place to appear in court, "the name and address of the person charged," and "the offense charged." Tex. Code Crim. Proc. Ann. art. 14.06; Tex. Transp. Code Ann. § 543.003. Citations serve as the charging instrument in offenses for which the maximum possible penalty is a fine. *See* Tex. Code Crim. Proc. Ann. art. 27.14(d) (West 2006 and Supp. 2012) ("[T]he written notice [i.e., citation] serves as a complaint to which the defendant may plead 'guilty,' 'not guilty,' or 'nolo contendere.' If the defendant pleads 'not guilty' to the offense or fails to appear based on the written notice, a complaint shall be filed[.]"). Because plaintiffs only assert a right of access to citations filed in justice and municipal courts, which only have criminal jurisdiction to impose fines, the citations requested here will serve as charging instruments (or at least as the basis for a sworn complaint if the defendant pleads "not guilty"). *See* Tex. Code Crim. Proc. Ann. art. 4.11 (West 2005) (justice court jurisdiction); *id.* at art. 4.14 (municipal court jurisdiction). Documents filed with a court that serve as charging instruments certainly play enough of a role in the judicial process to be considered "court records."

As an alternative to copies of citations, plaintiffs also request access to the automated court case file information derived from the citations. *See* 2d Am. Compl. ¶ 2(b). To the

extent this automated case file information is derived from citations filed with the justice and municipal courts at issue, plaintiffs have adequately pleaded that it constitutes a "court record." *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004) (recognizing First Amendment right of access to docket sheets).

C

Defendants also move to dismiss plaintiffs' asserted constitutional right of access on the grounds that they have failed to adequately plead the first prong of the "experience" and "logic" test, which examines whether the court record has historically been open to the press and general public.[6] *See Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enter. II*"); *Sullo & Bobbitt I*, 2012 WL 2796794, at *13-14.

The second amended complaint alleges that Texas courts have historically given public access to citations, but plaintiffs fail to allege, or argue in response to the motions to dismiss, that courts nationally have given such public access. Because plaintiffs assert a constitutional right under the *United States* Constitution, they must make allegations or raise arguments that are sufficient to support a reasonable inference that courts throughout the United States have historically released citations or citation information to the public. *See El Vocero de P.R. (Caribbean Int'l News Corp.) v. Puerto Rico*, 508 U.S. 147, 150 (1993) (per curiam) (explaining that "the 'experience' test . . . does not look to the particular practice of any one jurisdiction, but instead to the experience in that type or kind of hearing

---

[6]In *Sullo & Bobbitt I* the court held that plaintiffs had adequately alleged the "logic" prong of the test. *See Sullo & Bobbitt I*, 2012 WL 2796794, at *15.

throughout the United States" (citation and internal quotation marks omitted)).

The court therefore dismisses plaintiffs' constitutional claim against Justice Jones and Lopéz for access to the requested court records.[7]

V

The court next addresses the asserted grounds for dismissal that are pertinent to Justice Jones's motion alone.

A

Justice Jones contends that plaintiffs have failed to adequately allege that he is a

[7]The court notes that, because plaintiffs purport to allege a right of immediate (or prompt) access to the requested court records, they must in repleading assert a plausible claim that there is a right of such access to the requested court records in the commercial speech context. Courts generally recognize that the First Amendment right of access includes a timeliness aspect, since delaying access "may have the same result as complete suppression." *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994); *see also Courthouse News Serv. v. Jackson*, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) (holding that, for press access to new civil petitions filed in state courts, "a 24 to 72 hour delay in access is effectively an access denial"). But the right of access in the commercial speech context is distinguishable from the press and public's right of access. The purposes underlying the press and public's First Amendment right of access include protecting the free and informed discussion of government affairs, and providing public scrutiny of judicial proceedings to enhance their quality and safeguard their integrity. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604, 606 (1982). A right of access for commercial speech would serve different values, such as plaintiffs' goal of advertising the availability of legal representation. And it is conceivable that one could effectively exercise commercial speech rights without the same temporal degree of access that is considered necessary to facilitate public scrutiny by the press and public. *See, e.g.*, *United States v. Edwards*, 823 F.2d 111, 119 (5th Cir. 1987) (describing the diminished value of untimely news reporting). Therefore, for plaintiffs to plead a plausible claim based on a right of *prompt* access to court records—such as a right of access to citations within one business day of being filed—they must allege facts showing how their commercial speech rights are adversely affected by a temporal delay.

"policymaker," which is required to plead or establish the liability of Dallas County under § 1983.[8]

To plead the liability necessary for their § 1983 claims, plaintiffs must allege "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (internal quotation marks omitted). In *Sullo & Bobbitt I* this court held that plaintiffs had failed to adequately allege that Justice Jones is a "policymaker." *Sullo & Bobbitt I*, 2012 WL 2796794, at *18.

To be a "policymaker," the county official must "possess[] final authority to establish *municipal policy* with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (emphasis added). The policy at issue must be the official policy of the municipality, not merely the discretionary practices of one municipal official. *See, e.g., id.* at 480 ("*Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered."). In their second amended complaint, plaintiffs allege that Justice Jones exercises independent control over the release of records from his court. *See* 2d Am. Compl. ¶ 6(c). While Justice Jones may have independent discretion to control the release of such records, there is no allegation that he sets such a policy for the county as a

---

[8]As noted, Justice Jones is sued in his official capacity.

whole. Furthermore, courts have consistently held that Texas justices of the peace do not make county policy. *See Bigford v. Taylor*, 834 F.2d 1213, 1222 (5th Cir. 1988) (explaining that a justice of the peace's tasks "do[] not involve any of the policymaking functions assigned to the county judge," and holding that justice of the peace was not acting as policymaker when exercising discretion over how to handle cases on his docket); *Tinoco v. Raleeh*, 2006 WL 27287, at *3 (E.D. Tex. Jan. 5, 2006) (justice of the peace not policymaker for alleged improper termination of his staff member); *Collard v. Hunt Cnty.*, 2001 WL 1012695, at *2-3 (N.D. Tex. Aug. 21, 2001) (Boyle, J.) (holding justice of the peace not policymaker for judicial decision to remove plaintiffs from property after they became delinquent in their payments).

Accordingly, the claims against Justice Jones, which are in his official capacity, are dismissed for the additional reason that plaintiffs have failed adequately to plead county liability under § 1983.

B

Justice Jones also asserts that plaintiffs' § 1983 claim should be denied on the ground that they have failed to adequately allege that he acted with deliberate indifference to the risk of the constitutional violation. This contention relates to the third element of the § 1983 claim— the requirement that a policy or custom be the moving force of a constitutional violation. *See Valle*, 613 F.3d at 542.

> To succeed [on a § 1983 claim], a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. That is, the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.

*Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 411 (1997)) (internal quotation marks and citation omitted).

The court holds that plaintiffs have failed to adequately allege that Justice Jones was deliberately indifferent to plaintiffs' rights. In *Sullo & Bobbitt I* the court held that plaintiffs had adequately alleged deliberate indifference as to Lopéz and Judges Mares and Milner. *See Sullo & Bobbitt I*, 2012 WL 2796794, at *17-19. It concluded that the first amended complaint had sufficiently pleaded deliberate indifference by alleging that Lopéz and Judges Mares and Milner resisted releasing the requested court records because they intended to discourage legal representation so that persons charged with offenses would pay their fines, which were a substantial revenue source for their cities. *See id.*[9] Plaintiffs' allegations about the revenue motivation behind discouraging legal representation do not include Justice Jones.

> Fines imposed through the courts of the Judges and Lopez (*other than Defendant Dallas JP1-1* [i.e., Justice Jones]) provide a substantial and growing amount of revenues needed by the cities of Dallas, Fort Worth, and Arlington to balance their

---

[9]The court did not address in *Sullo & Bobbitt I* whether plaintiffs had adequately pleaded deliberate indifference as to Justice Jones; it granted his motion to dismiss because plaintiffs had not adequately alleged that he was a "policymaker." *See Sullo & Bobbitt I*, 2012 WL 2796794, at *18.

> respective budgets. For this reason, the Defendants systematically discourage persons charged with such offenses from engaging the services of attorneys and pleading "not guilty."

2d Am. Compl. ¶ 21 (emphasis and bracketed material added); *see also* 1st Am. Compl. ¶ 28 (same allegations). Plaintiffs' allegations distinguish Justice Jones's justice court from the other courts whose fines provide revenue for their respective cities. The court relied on this revenue motivation to draw the reasonable inference that Lopéz and Judges Milner and Mares were deliberately indifferent to plaintiffs' rights. But plaintiffs do not allege that Justice Jones has an interest in the revenue from fines that motivates him to discourage the opportunity for legal representation. Without making an allegation that enables the court to draw a reasonable inference of deliberate indifference, plaintiffs have failed to adequately plead that Justice Jones was deliberately indifferent. The court therefore grants Justice Jones's motion to dismiss on this ground as well.

C

Justice Jones also moves to dismiss on the ground that plaintiffs have failed to exhaust Texas's administrative requirements for requesting "judicial records." *See* Jones Br. 3 (citing Tex. R. Jud. Admin. 12.6, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app. (West 2005)). But the court records that plaintiffs seek are not "judicial records," as defined by the applicable rule. *See* Tex. R. Jud. Admin. 12.2(d); *see also* 2d Am. Compl. ¶ 14 (stating that "Judges and Lopez claim—probably correctly—that the criminal case file information Plaintiffs seek is not a 'judicial record'" under Tex. R. Jud. Admin. 12.2). "Judicial records"

are not records "pertaining to [a court's] adjudicative function" and are not "[a] record of any nature created, produced, or filed in connection with any matter that is or has been before a court." Tex. R. Jud. Admin. 12.2(d). The court denies this ground of Justice Jones's motion to dismiss.

VI

Although the court is again dismissing plaintiffs' claims, it will permit them to replead. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (internal quotation marks and citation omitted)). Because plaintiffs have not stated that they cannot, or are unwilling to, cure the defects that the court has identified, the court grants them 30 days from the date this memorandum opinion and order is filed to file an amended complaint. If they cannot cure the defects after a third opportunity to replead, the court can then dismiss their suit with the assurance that they have been given every reasonable chance to state a claim on which relief can be granted.

* * *

For the reasons explained, the court grants Lopéz's September 5, 2012 motion to dismiss and Justice Jones's August 22, 2012 motion to dismiss. The court grants plaintiffs 30 days from the date this memorandum opinion and order is filed to file a third amended

complaint.[10]

**SO ORDERED.**

May 13, 2013.

SIDNEY A. FITZWATER
CHIEF JUDGE

[10]While these motions were pending, Lopéz and Justice Jones asked the court to consider *McBurney v. Young*, ___ U.S. ___, 2013 WL 1788080 (U.S. Apr. 29, 2013), as supplemental authority in support of their motions to dismiss. Because *McBurney* does not affect the court's analysis, it need not address *McBurney* specifically. If *McBurney* becomes relevant after plaintiffs replead, the court can consider the parties' positions in the context of any motions to dismiss that follow.